**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Private Jet Services Group, LLC, Plaintiff | |
| v. | Civil Case. No. 4:25-cv-4184 |
| ExcelAire, LLC, Defendant | **JURY TRIAL DEMANDED** |

**COMPLAINT FOR DAMAGES**

**INTRODUCTION**

1. This action seeks to recover outstanding payments due to Private Jet Services Group, LLC ("PJS") pursuant to an executed Air Charter Operator Quote and Contract (the "Contract") for a series of charter flights between PJS and ExcelAire, LLC ("ExcelAire" or "Defendant").

2. On or around May 7, 2025, PJS entered into the Contract (**Ex. A, p. 4-8)**, whereby ExcelAire would operate a series of charter flights for PJS's client under Trip #2QKJVU-03 on a Gulfstream G-V with registration number N934HE (the "Aircraft").

3. These flights were scheduled to take place starting on August 9, 2025, through August 23, 2025, and make ten (10) different stops, starting in Rapid City, SD and concluding in Bedford, MA.

4. PJS paid ExcelAire the contracted price of $180,000 on August 5, 2025.

5. Two (2) legs of the charter tour commenced before ExcelAire abruptly canceled the remaining eight (8) legs of the charter, and Defendant offered PJS an unspecified partial refund in return.

6. PJS was required to immediately, and at the last minute, source a new operator to fly PJS's client on the remaining eight (8) legs of the tour. As such, PJS demanded a full refund of its charter price.

7. PJS sent ExcelAire and the owner of the Aircraft a Demand Letter (the "Demand," **Ex. A**) on August 13, 2025. To date, neither ExcelAire nor the owner have responded to the Demand.

## PARTIES

8. Plaintiff Private Jet Services Group, LLC is a limited liability company existing under the laws of the State of Florida and with a principal place of business at 1111 Lincoln Road, Suite 500, Miami Beach, Florida 33139. All of its members are citizens of Florida.

9. Defendant ExcelAire, LLC("ExcelAire") is a limited liability company with its principal place of business at 2221 Smithtown Ave., Ronkonoma, NY 11779. On information and belief, none of its members are citizens of Florida.

## JURISDICTION & VENUE

10. The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.

11. The Court has personal jurisdiction over Defendant because the Contract that the parties entered into, which is Defendant ExcelAire's contract, requires that any controversary arising from the Contract be brought in a State or Federal Court located in Harris County, Texas.

12. Venue in the Southern District of Texas is proper because the General Terms of the Contract require this case to be brought in a State or Federal Court located in Harris County, Texas. **(Ex. A p. 8)** Additionally, the Aircraft has its home base in Houston, Harris County, Texas.

## FACTS

13. On or around May 7, 2025, PJS entered into the Contract requiring ExcelAire to operate a ten-leg tour for PJS and its client, starting on August 9, 2025, through August 23, 2025.

14. PJS paid ExcelAire the contracted price of $180,000.00 on August 5, 2025.

15. On August 9, 2025, the first flight of the 10-leg charter began, going from Rapid City, South Dakota to St. Louis, Missouri. The following day, the charter continued from St. Louis to Tampa, Florida. The next day, August 11, 2025, ExcelAire abruptly canceled the remaining eight (8) legs of the charter, noting that "[t]he owner of the plane has been called away on an urgent flight and the aircraft will not be available for the remainder of the tour."

16. PJS was required to immediately, and at the last minute, source a new operator to fly PJS's client on the remaining eight (8) legs of the tour, at a cost much higher than it originally had paid to ExcelAire per leg.

17. The Contract gives ExcelAire no right, for any reason other than force majeure, to cancel the remaining legs of the tour with no notice, particularly once the charter had already commenced.

18. As such, ExcelAire has breached the Contract, and PJS demanded a full refund of its charter price. See **Ex. A**, Demand Letter.

19. Since then, PJS discovered that the alleged reason ExcelAire canceled the remainder of the charter flights was, not just a breach of the contract, but likely a fraudulent reason. Upon information and belief, ExcelAire has repeatedly engaged in this type of behavior with other

clients. (*See* **Ex. A**, **p. 14**, Demand Letter with attached capture of an email where ExcelAire made the same excuse when cancelling another client.)

20. In addition to the email evidence, PJS also tracked the Aircraft after it dropped off PJS's client in Tampa, Florida, and discovered that it returned to its home base in Houston, Texas, and then remained there for two (2) days until the evening of August 12, 2025, when the Aircraft went back to Florida, to Tallahassee, where, upon information and belief, influencer/boxer Jake Paul posted a photo of himself on Instagram boarding the Aircraft. The Aircraft then departed to Milan, Italy where it remained through at least August 13, 2025. (See **Ex. A, p. 9-13** Demand Letter with attached photos and flight tracking information).

21. Notably, Jake Paul is not the registered owner of the Aircraft.

22. In addition, upon information and belief, this is not the only fraudulent behavior ExcelAire is engaging in.

23. ExcelAire markets itself as having certain safety ratings, namely, "ARGUS Platinum" and "Wyvern Wingman" status.

24. However, upon information and belief, ExcelAire lost its ARGUS rating altogether, and is a Wyvern "Flight Leader," a rating lower than "Wingman" status.

25. Due to these breaches of contract and fraudulent misrepresentation, PJS requested a full refund.

26. ExcelAire purported to offer a partial refund of $120,000.00, but despite requests from PJS, did not provide an accounting of how it came to this number, and has not tendered any funds.

27. Furthermore, $120,000.00 is much less than the cost PJS was required to spend to cover the remainder of the charter for its client.

28. PJS sent a Demand Letter on August 13, 2025, to both Marcos Bell, the President of ExcelAire, and JEMB GV, LV, in the care of Joseph Jerome, the Manager of JEMB GV, LV, and the owner of the Aircraft. See **Ex. A.**

29. To date, neither ExcelAire nor the Owner have responded to the Demand.

## COUNT I – BREACH OF CONTRACT

30. Plaintiffs re-allege and incorporate by reference all paragraphs as if fully restated herein.

31. Pursuant to the Contract, PJS paid the full amount of the Contract price of $180,000.00 prior to the commencement of the 10-leg charter tour.

32. Two legs into the charter, ExcelAire unilaterally canceled the remaining eight (8) legs of the charter, leaving PJS's client stranded.

33. Pursuant to the Contract, nowhere was ExcelAire unilaterally allowed to cancel a charter once it has commenced, for any reason outside of force majeure.

34. ExcelAire is thus in breach of the Contract and PJS is entitled to direct and consequential damages.

35. Plaintiffs claim all damages to which it is entitled by law and under this cause of action.

## COUNT II – VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES ACT (DTPA)

36. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

37. PJS is a "consumer" under the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 et seq. ("DTPA"), as it sought to purchase services (air charter operations) from ExcelAire.

38. ExcelAire is a "person" engaged in the business of offering and providing charter air services in exchange for compensation and is therefore subject to the DTPA.

39. ExcelAire, in the course of trade and commerce, engaged in false, misleading, or deceptive acts or practices prohibited by the DTPA, including but not limited to:

a. Representing that services had characteristics or benefits they did not have, in violation of Tex. Bus. & Com. Code § 17.46(b)(5);

b. Representing that an agreement conferred or involved rights that it did not, in violation of Tex. Bus. & Com. Code § 17.46(b)(12);

c. Failing to disclose information about services known at the time of the transaction, with the intent to induce Plaintiff into the transaction, in violation of Tex. Bus. & Com. Code § 17.46(b)(24);

d. Advertising services with intent not to sell them as advertised, in violation of Tex. Bus. & Com. Code § 17.46(b)(9).

40. Specifically, ExcelAire misrepresented the Aircraft's availability, failed to disclose their willingness to cancel the tour for non-emergency reasons, and, upon information and belief, falsely stated the Aircraft was required for an "urgent flight" when in fact it was used for a non-emergency celebrity charter.

41. In addition, ExcelAire misrepresented and advertised that it maintained ARGUS Platinum and Wyvern Wingman safety ratings, when in fact, upon information and belief, it had lost

its ARGUS rating and held a lower Wyvern Flight Leader designation — materially misleading PJS in its decision to charter through ExcelAire.

42. These misrepresentations caused damages to PJS, including loss of the charter funds paid, increased costs for replacement flights, reputational harm, and attorneys' fees.

43. Defendants' violations of the DTPA were committed knowingly and/or intentionally, entitling Plaintiff to treble damages under Tex. Bus. & Com. Code § 17.50(b)(1).

44. Plaintiff seeks all available relief under the DTPA, including economic damages, treble damages for knowing or intentional conduct, court costs, and reasonable and necessary attorneys' fees.

**COUNT III – UNJUST ENRICHMENT**

45. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

46. As described above, PJS paid $180,000.00 to ExcelAire in exchange for the performance of a 10-leg charter flight to be completed between August 9 and August 23, 2025.

47. ExcelAire completed only two (2) of the ten (10) contracted flight legs before unilaterally canceling the remainder of the charter on August 11, 2025, without justification under the Contract and without refunding the portion of the payment corresponding to the unperformed services.

48. Despite ExcelAire's failure to complete the contracted services, it has retained all of the $180,000.00 paid by PJS.

49. ExcelAire has therefore been unjustly enriched by retaining the benefit of PJS's payment while failing to deliver the services for which the payment was made.

50. Under principles of equity and good conscience, ExcelAire should not be permitted to retain funds for services it did not perform.

51. As a direct result of this unjust enrichment, PJS has suffered economic harm in an amount no less than the reasonable value of the unperformed eight (8) legs of the charter and the excess costs incurred to secure replacement flights.

52. PJS seeks restitution or disgorgement in the amount of the unjust enrichment retained by ExcelAire, in an amount to be proven at trial, as well as pre- and post-judgment interest and any other relief the Court deems just and proper.

**COUNT IV – FRAUDULENT MISREPRESENTATION**

53. Plaintiff re-alleges and incorporates by reference all prior paragraphs as if fully set forth herein.

54. Prior to entering into the Contract, ExcelAire represented to PJS, both directly and through its marketing materials, that it held certain industry-recognized safety certifications — specifically, ARGUS Platinum and Wyvern Wingman ratings.

55. These safety certifications are important standards within the private aviation industry and were material to PJS's decision to contract with ExcelAire for the multi-leg charter flight. PJS relies on such ratings when determining whether to entrust an operator with its clients.

56. Upon information and belief, these representations were false at the time they were made. ExcelAire had lost its ARGUS rating entirely and held a Wyvern Flight Leader designation — which is a lower designation than the "Wyvern Wingman" status ExcelAire claimed.

57. ExcelAire made these misrepresentations with knowledge of their falsity or with reckless disregard for the truth, intending to induce PJS to contract for the charter services under the false belief that ExcelAire met the highest levels of operational safety and oversight.

58. PJS reasonably and justifiably relied on ExcelAire's false representations regarding its safety credentials in selecting ExcelAire as the charter operator for this high-value engagement.

59. Had PJS known the true status of ExcelAire's safety ratings — that it lacked ARGUS certification and was not a Wyvern Wingman — it likely would not have contracted with ExcelAire for the charter services at issue.

60. As a direct and proximate result of ExcelAire's fraudulent misrepresentations, PJS suffered damages including, but not limited to, the amounts paid under the Contract, the additional costs required to secure replacement flights, reputational harm, and attorneys' fees.

61. ExcelAire's conduct was intentional, willful, and done with malice or in reckless disregard of PJS and its client's rights, entitling PJS to punitive damages under Texas law.

62. Plaintiff seeks all available relief under Texas law for fraudulent misrepresentation, including actual damages, consequential damages, exemplary damages, attorneys' fees, and costs.

**WHEREFORE,** Plaintiffs respectfully request that this Honorable Court:

A. Enter Judgment in Plaintiff's favor and against Defendant for breach of contract, violation of the Texas DTPA, unjust enrichment, and fraudulent misrepresentation;

B. Award all damages to which Plaintiff is entitled, including consequential damages, any late-fees, and interest;

C. Award Plaintiff reasonable attorney's fees and costs of suit; and

D. Grant such other and further relief as is just and proper.

**JURY DEMAND**

The Plaintiff demands a jury trial by jury on all issues so triable.

Dated: September 4, 2025

Respectfully Submitted,

PRIVATE JET SERVICES GROUP, LLC

By their Attorneys,

**BRESSLER, AMERY & ROSS, P.C.**
By: *<u>/s/John P. Kincade</u>*
**John P. Kincade**
Texas Bar No. 11429600
jkincade@bressler.com
16475 Dallas Parkway
Suite 555
Addison, Texas 75001
T: 972-733-2900
Mary Jo Cantu
Texas Bar No. 08819900
mjcantu@bressler.com
12 Greenway Plaza, Suite 1100
Houston, Texas 77046
Telephone: (713) 403-6400
Facsimile: (713) 403-6410